1   MARK D. ROSENBAUM, SBN 59940
    mrosenbaum@aclu-sc.org
2   PETER J. ELIASBERG, SBN 189110
    ACLU FOUNDATION OF
3    SOUTHERN CALIFORNIA
    1313 W. 8th Street
4   Los Angeles, CA 90017
    Telephone: (213) 977-9500 x 224
5   Facsimile: (213) 977-5297

6   CAROL A. SOBEL, SBN 84483
    carolsobel@aol.com
7   LAW OFFICES OF CAROL A. SOBEL
    429 Santa Monica Blvd., Suite 550
8   Santa Monica, CA 90401
    Telephone: (310) 393-3055
9   Facsimile: (310) 393-3605

10  Attorneys for Plaintiffs

11

12
                    UNITED STATES DISTRICT COURT
13
           FOR THE CENTRAL DISTRICT OF CALIFORNIA
14

15  EDWARD JONES, et al.,              )   Case No. CV 03-1142 ER (RNBx)
                                       )
16                                     )
                          Plaintiffs,  )   PLAINTIFFS' CORRECTED
17       vs.                           )   MEMORANDUM OF POINTS AND
                                       )   AUTHORITIES IN SUPPORT OF THE
18  CITY OF LOS ANGELES, et al.,       )   MOTION FOR ATTORNEYS' FEES
                                       )   AND COSTS
19                        Defendants.  )
    _____  )   Date: October 20, 2008
20                                     )   Time: 10:00 a.m.
                                           Ctrm: 8
21

22

23

24

25

26

27

28

1
2

## **Table of Contents**

3    I.    Preliminary Statement                                                    1

4    II.   Statement of the Case                                                    1

5    Argument                                                                       3

6    III.  Plaintiffs Are the Prevailing Parties and Thus Are                       3
           Entitled To Court-Awarded Attorneys Fees and Expenses

7          A.    Plaintiffs are the Prevailing Parties Under Federal Law            3

8          B.    Plaintiffs are the Prevailing Parties Under State Law              7
9                And Are Entitled to Attorney Fees and Costs Pursuant to
                 California Code of Civil Procedure §1021.5

10               1.    The Settlement Agreement Establishes that Plaintiffs        8
11                     Are Prevailing Parties

12               2.    The Settlement Agreement Need Not Address the Issue         9
                       Of Fees to Preserve Plaintiffs' Entitlement to Fees and Costs

13               3.    The Action Resulted in Enforcement of an Important         10
14                     Right Affecting the Public Interest

15               4.    The Settlement Conferred a Significant Benefit On A        10
                       Large Class of Persons

16               5.    The Necessity and Financial Burden of Private             11
17                     Enforcement Make the Award of Fees Appropriate
                       In This Case

18         C.    Plaintiffs' Requested Hours-Times-Rates Lodestar Is             11
19               Altogether Reasonable and Should Be Allowed

20         D.    Plaintiffs' Lodestar Should Be Enhanced by a 2.0               13
                 Multiplier Because of the Exceptional Results Won,
21               and Because of the Contingency of Any Fee Recovery

22         E.    Court-Awarded Attorneys Fees Properly Include Out-             15
                 of-Pocket Expenses Which Also Should Be Allowed

23   CONCLUSION                                                                  16

24
25
26
27
28

i

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **Table of Authorities**

Federal Cases:

Barrios v. California Interscholastic Federation, 277 F.3d 1128     3,5
(9th Cir. 2002)

Blum v. Stenson, 465 U.S. 886 (1984)     13, 14

Buckhannon Board and Care Home, Inc. v. West Virginia     3
Department of Health and Human Resources, 532 U.S. 598 (2001)

Chalmers v. City of Los Angeles, 796 F.2d 1205 (9th Cir. 1986),     16
*reh'g denied and opinion amended*, 808 F.2d 1373 (9th
Cir. 1987)

City of Burlington v. Dague, 505 U.S. 557 (1992)     14

Crommie v. California Public Utilities Commission, 840 F. Supp.     14
719 (N.D. Cal. 1994), *aff'd sub nom.*, Mangold v.
California Public Utilities Commission, 67 F.3d 1470
(9th Cir. 1995)

Dang v. Cross, 442 F.3d 800 (9th Cir. 2005)     16

Davis v. Mason County, 927 F.2d 1473 (9th Cir. 1994)     16

Davis v. San Francisco, 976 F.2d 1536 (9th Cir. 1992), *vacated*     12
*in part as to expert fees*, 984 F.2d 345 (9th Cir. 1993)

Farrar v. Hobby, 506 U.S. 103 (1992)     5

Fischer v. SJB-P.D. Inc., 214 F.3d 1115 (9th Cir. 2000)     5

Guam Society of Obstetricians and Gynecologists v. Ada, 100     14
F.3d 691 (9th Cir. 1996)

Harris v. Marhoefer, 24 F.3d 16 (9th Cir. 1994)     16

Hensley v. Eckerhart, 461 U.S. 424 (1983)     12,14

International Woodworkers of America, AFL-CIO, Local 3-98 v.     16
Donovan, 792 F.2d 762 (9th Cir. 1986)

Jones v. City of Los Angeles, 444 F.3d 1118 (9th Cir. 2006),     *passim*
*vacated as moot*, 505 F.3d 1006 (9th Cir. 2007)

Jordan v. Multnomah County, 815 F.2d 1258 (9th Cir. 1987)     13

Labotest, Inc. v. Bonta, 297 F.3d 892 (9th Cir. 2002)     5

Mendehall v. National Transportation Safety Board, 213 F.3d     13
464 (9th Cir. 2000)

P.N. v. Seattle School District No. 1, 474 F.3d 1165 (9th Cir. 2007)          5

Quesada v. Thomason, 850 F.2d 537 (9th Cir. 1988)          12

Roulette v. City of Seattle, 97 F.3d 300 (9th Cir. 1996)          1

Richard S. v. Department of Developmental Services, 317 F.3d          5
     1080 (9th Cir. 2003)

Sole v. Wyner, 551 U.S. ____, 127 S.Ct. 2188 (2007)          3

Trevino v. Gates, 99 F.3d 911 (9th Cir. 1996)          13

Watson v. County of Riverside, 300 F.3d 1092 (9th Cir. 2002)          6

White v. City of Richmond, 713 F.2d 458 (9th Cir. 1983)          14

Wing v. Asarco, Inc., 114 F.3d 986 (9th Cir. 1997)          14

California Cases:

Adoption of Joshua S., 42 Cal.4th 945 (2008)          8

Beasley v. Wells Fargo Bank, 235 Cal.App.3d 1407 (1992)          11, 16

Fletcher v. A.J. Industries, Inc., 266 Cal.App.2d 313 (1968)          9

Folsom v. Butte County Assn. of Governments, 32 Cal.3d 668 (1982)          9, 10

Graham v. Daimler-Chrysler Corp., 34 Cal.4th 553 (2006)          7,8

Ketchum v. Moses, 24 Cal.4th 1122, 104 Cal.Rptr.2d 377 (2001)          12, 14

Lyons v. Chinese Hospital Association, 136 Cal.App.4th 1331 (2006)          8,9

Maria P. v. Riles, 43 Cal.3d 1281 (1987)          8

Olson v. Automobile Club of So. Calif., 42 Cal.4th 1142 (2008)          16

Planned Parenthood v. Aakhus, 14 Cal.App.4th 162 (1993)          9

Press v. Lucky Stores, 34 Cal.3d 311 (1983)          10,11, 14

Santinas v. Goodin, 17 Cal.4th 599 (1998)          9

Serrano v. Priest, 20 Cal.3d 25, 141 Cal.Rptr. 315 (1997)          7, 14

Serrano v. Unruh, 32 Cal.3d 621 (1982)          7, 8

Skaff v. Meridien North America Beverly Hills, LLC,          9
     506 F.3d 832 (9th Cir. 2007)

Federal Constitution:

Eighth Amendment                                                    1, 2

California Constitution:

Cal. Const. art I, § 7                                         1,2,10,15

Cal. Const. art I, § 17                                        1,2,10,15

Federal Statutes:

42 U.S.C. § 1988                                                      15

California Statutes:

Code Civ. Pro. § 1021.5                                          *passim*

Los Angeles Municipal Ordinances:

Los Angeles Municipal Code ("LAMC") §41.18(d)                     2,3,8

Treatises:

Pearl, California Attorney Fee Awards (Cont. Ed. Bar 2d ed. 2005)    8,9

## I.     PRELIMINARY STATEMENT

Plaintiffs seek attorney fees and costs  as prevailing parties in this action.  The motion follows the settlement agreement entered into by the parties in *Jones v. City of Los Angeles*, 444 F.3d 1118 (9ᵗʰ Cir. 2006), vacated as moot, 505 F.3d  1006  (9ᵗʰ Cir. 2007), and is filed pursuant to the Court's Order issued on September 22, 2008.

Plaintiffs are prevailing parties in this action based on both their federal and analogous state constitutional claims. As such, they are entitled to attorney fees and costs under 42 U.S.C. § 1988 for their Eighth Amendment claim, and under California Code of Civil Procedure ("CCP") 1021.5 as private attorney generals for the vindication of analogous state Constitution claims under Article I, sec. 7 and 17.

Plaintiffs also are entitled to a multiplier under both federal and state law.  This case involved exceptional skill and an extraordinary amount of time to prepare, with a strong contingency risk.  No court had upheld a facial challenge to an anti-sleeping law in nearly 10 years and, in fact, the Ninth Circuit had rejected similar claims twice in recent years where they lacked the necessary and extensive evidentiary foundation to support the legal principle that criminalizing a homeless person sleeping or sitting in public when there is insufficient shelter violates the state and federal constitutional proscriptions on cruel and unusual punishment.  *Jones*, 444 F.3d at 1131-32 ("strong evidentiary showing of a substantial shortage of shelter [plaintiffs] made here") (edit supplied); *id.* at 1138, citing rejection of facial challenge in *Roulette v. City of Seattle*, 97 F.3d 300, 302 (9ᵗʰ Cir. 1996).

## II.     STATEMENT OF THE CASE

This action was filed in late February 2003 on behalf of five  individuals who were without regular nightly shelter in the area of downtown Los Angeles known as "Skid Row."[1]  The case challenged the enforcement of Los Angeles Municipal Code

---

[1]The sixth plaintiff, Thomas Cash, was suffering from kidney failure at the time and was undergoing dialysis several times a week.  As a result, he could not walk the several blocks from his single-room occupancy hotel to the restaurant where he used

("LAMC") § 41.18(d), which makes it unlawful for any person to sit, lie or sleep on any public street, sidewalk or other public way at any time of the night or day anywhere in the City. *Jones*, 444 F.3d at 1123. The only exception in the ordinance is to view a permitted parade or procession. *Id.*

The complaint alleged that the enforcement of LAMC § 41.18(d) when the lack of available shelter made it impossible for plaintiffs to avoid violating the law infringed plaintiffs' Eighth Amendment right to be free from cruel and unusual punishment, as well as the analogous provisions of the California Constitution, Article I, sec. 7 and 17. *Jones,* 444 F.3d at 1125. Each of the plaintiffs had been cited and/or arrested at least once for a violation of the ordinance. Two of the plaintiffs, Stanley Barger and Robert Lee Purrie, had been jailed for several days following their arrests. *Id.*, at 1130.

The parties filed cross-motions for summary judgment in mid-November 2003. The City did not challenge the factual assertions regarding the lack of shelter in the Skid Row area. *Jones*, 444 F.3d at 1120. The Honorable Edward Rafeedie held a hearing on the motions on December 15, 2003. On January 27, 2004, the court granted the defendants' motion and denied plaintiffs' motion for summary judgment.

Plaintiffs appealed from the Court's order granting summary judgment for the defendants. The appeal was argued before the Ninth Circuit on December 6, 2005. The Court issued its opinion on April 14, 2006, reversing summary judgment for defendants and granting summary judgment to plaintiffs. The Ninth Circuit noted that "Los Angeles's Skid Row has the highest concentration of homeless individuals" in the country. *Id.* at 1121. The Court also cited the City's public documents

---

his food vouchers without sitting down and resting along the way. Since there are no bus benches or other seating on the streets of Skid Row, Mr. Cash was forced to sit on the sidewalk to rest so that he could then walk the remaining blocks to his hotel. When he sat down to rest momentarily, he was cited by the police for violating § 41.18(d). *Jones*, 444 F.3d at 1124.

2

showing that "more than 1,000 people [were] unable to find shelter each night" on Skid Row. *Id.* at 1122. The Circuit then cited to "City officials' own words, [to note] that 'the gap between the homeless population needing a shelter bed and the inventory of shelter beds is severely large.'" *Id*. (edits supplied) (citation omitted).

The Court of Appeal directed the district court to enter an injunction consistent with the Circuit's decision, suspending enforcement of LAMC § 41.18(d) between 9:00 p.m. and 6:30 a.m. until sufficient shelter was available. *Jones*, 444 F.3d at 1138.

Defendants filed a petition for rehearing with a suggestion for rehearing en banc. Thereafter, the Circuit initiated settlement discussions between the parties. On October 9, 2007, the parties finalized a written settlement agreement, which was approved by the Los Angeles City Council and the Mayor.

As a term of the settlement, the parties filed a joint motion with the Circuit to vacate the panel's opinion. The motion was granted on October 15, 2007.

On October 29, 2007, plaintiffs timely filed a motion with the Ninth Circuit to transfer the consideration of attorney fees and costs to the district court for consolidation with the application for fees and costs for the district court litigation. On November 13, 2007, the Circuit granted the motion to transfer.

On August 15, 2008, plaintiffs filed a motion in the district court to reopen the case and reassign it based on the unavailability of the previously assigned judicial officer. Plaintiffs also requested that the district court spread the mandate of the Ninth Circuit. On September 22, 2008, the Court held a status conference and spread the mandate. The court also set a schedule for plaintiffs' motion for fees and costs.

## **ARGUMENT**

**III.   PLAINTIFFS ARE THE PREVAILING PARTIES AND THUS ARE ENTITLED TO COURT-AWARDED ATTORNEY FEES AND EXPENSES**

### **A.   Plaintiffs Are the Prevailing Parties Under Federal Law**

Based upon preliminary negotiations with the defendants, plaintiffs learned that defendants intend to contest plaintiffs' entitlement to court-awarded attorneys fees

3

1   and expenses.  We accordingly address this matter at the outset.

2       First, based on plaintiffs' state constitutional claims here, plaintiffs are entitled
3   to fees under the statutory private-attorney-general doctrine codified in CCP §
4   1021.5.

5       Second, and entirely apart from the prevailing party doctrine under state law,
6   plaintiffs are the prevailing parties entitled to fees under 42 U.S.C. § 1988.
7   Defendants object to plaintiffs' prevailing party status.  Defendants' objection,
8   however, is based on a misreading of the Supreme Court's decision in *Buckhannon*
9   *Board and Care Home, Inc. v. West Virginia Department of Health and Human*
10  *Resources*, 532 U.S. 598 (2001).

11      In *Buckhannon*, the plaintiff had challenged several statutes which the state
12  legislature thereafter voluntarily repealed.  In this context, the Court ruled that
13  plaintiff had not prevailed because a plaintiff prevails only "when actual relief on the
14  merits of his claim materially alters the legal relationship between the parties by
15  modifying the defendant's behavior in a way that directly benefits the plaintiff."  532
16  U.S. at 600.  This essential holding in *Buckhannon* was recently reaffirmed by the
17  Court in *Sole v. Wyner*, 551 U.S. ____, ____, 127 S.Ct. 2188, 2194 and n.3 (2007).

18      In view of this essential holding in *Buckhannon*, the Ninth Circuit ruled in
19  *Barrios v. California Interscholastic Federation*, 277 F.3d 1128 (9th Cir. 2002), that
20  a plaintiff who obtains relief through a "settlement agreement" is the prevailing party
21  entitled to fees and expenses.  In its ruling, the Ninth Circuit in *Barrios* quoted from
22  a prior Ninth Circuit decision (holding that a plaintiff who obtains relief through a
23  settlement agreement is the prevailing party), which in turn quoted from a prior
24  Supreme Court decision:

25      Under applicable Ninth Circuit law, a plaintiff "prevails" when he or she enters
26  into a legally enforceable settlement agreement against the defendant:

27          "[A] plaintiff 'prevails' when actual relief on the merits of his claim
28          materially alters the legal relationship between the parties by modifying

4

1     the defendant's behavior in a way that directly benefits the plaintiff."

2     The Court explained that a "material alteration of the legal relationship

3     occurs [when] the plaintiff becomes entitled to enforce a judgment,

4     consent decree, or settlement against the defendant." In these situations,

5     the legal relationship is altered because the plaintiff can force the

6     defendant to do something he otherwise would not have to do.

7 *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1118 (9th Cir. 2000) (quoting *Farrar v.*

8 *Hobby*, 506 U.S. 103, 111-12, 113). *Barrios*, 277 F.3d at 1134 (brackets by the Ninth

9 Circuit) (emphasis added).

10     In ruling in *Barrios* that a plaintiff who obtains relief through a settlement

11 agreement properly becomes the prevailing party, the Ninth Circuit expressly rejected

12 dictum in *Buckhannon* apparently relied on by defendants here:

13     While dictum in *Buckhannon* suggests that a plaintiff "prevails" only

14     when he or she receives a favorable judgment on the merits or enters

15     into a court-supervised consent decree, we are not bound by that dictum,

16     particularly when it runs contrary to this court's holding in *Fischer*, by

17     which we are bound.  Moreover, the parties, in their settlement, agreed

18     that the district court would retain jurisdiction over the issue of

19     attorneys' fees, thus providing sufficient judicial oversight to justify an

20     award of attorneys' fees and costs.

21 *Barrios*, 277 F.3d 1134-35, n. 5 (citation omitted).

22     The Ninth Circuit's ruling in *Barrios* is hardly the only appellate precedent

23 recognizing that settlement agreements favorable to plaintiffs make the plaintiffs

24 prevailing parties.  *See*, *e.g.*, *Richard S. v. Department of Developmental Services*,

25 317 F.3d 1080 (9th Cir. 2003); *Labotest, Inc. v. Bonta*, 297 F.3d 892 (9th Cir. 2002).

26     We recognize that the Ninth Circuit subsequently in *P.N. v. Seattle School*

27 *District No. 1*, 474 F.3d 1165, 1172-74 (9th Cir. 2007), both dismissed the foregoing

28 quote from *Barrios* as dictum, and held that a plaintiff who had won no judicial ruling

1   whatsoever had not received the requisite judicial imprimatur and thus could not be
2   deemed a prevailing party within the meaning of *Buckhannon*.  Yet the Ninth Circuit
3   in *P.N.* did not suggest that the *Barrios* Court had improperly characterized the
4   *Buckhannon* verbiage as dictum, nor did the Ninth Circuit in *P.N.* hold that the
5   requisite judicial imprimatur could be obtained only through a final judgment or a
6   consent decree.  Nor could it have.

7        In *Watson v. County of Riverside*, 300 F.3d 1092 (9th Cir. 2002) – a case in
8   which plaintiff won a preliminary injunction, lost his damage claims, and ultimately
9   had his injunctive claim dismissed as moot – defendants argued that plaintiff could
10   not be deemed a prevailing party within the holding of *Buckhannon* because plaintiff
11   had not recovered through a judgment on the merits or through a consent decree.  The
12   Ninth Circuit rejected this argument.  Conceding that "*Buckhannon* holds that to be
13   a prevailing party, one must have obtained a 'judicial imprimatur' that alters the legal
14   relationship of the parties," the Ninth Circuit ruled:

15        Judgments and consent decrees are examples of that, but they are not the
16        only examples.  A preliminary injunction issued by a judge carries all
17        the "judicial imprimatur" necessary to satisfy *Buckhannon*.
18   *Watson*, 300 F.3d at 1096 (citation omitted).

19        Plaintiffs here obtained not just a favorable and legally enforceable Settlement
20   Agreement, but also a definitive judicial imprimatur by a Court of Appeals that
21   altered the legal relationship of the parties through entitlement to final injunctive
22   relief.  As to the latter, the Ninth Circuit specifically ruled:

23        [S]o long as there is a greater number of homeless individuals in Los
24        Angeles than the number of available beds, the City may not enforce
25        section 41.18(d) at all times and places throughout the City against
26        homeless individuals for involuntarily sitting, lying, and sleeping in
27        public. [Plaintiffs-]Appellants are entitled at a minimum to a narrowly
28        tailored injunction against the City's enforcement of section 41.18(d) at

1    certain times and/or places.

2    *Jones*, 444 F.3d at 1138 (brackets added).  The Ninth Circuit also "grant[ed] summary

3    judgment to [Plaintiffs-]Appellants" and remanded the case "to the district court for

4    a determination of injunctive relief consistent with this opinion." *Id.* (brackets

5    added).  More than just a preliminary injunction as in *Watson*, this judicial imprimatur

6    by the Ninth Circuit is more than enough to satisfy *Buckhannon*.

7        Although the parties' Settlement Agreement obviated the need for the entry of

8    the final injunctive relief directed by the Ninth Circuit, ¶¶ 1-4 of that legally

9    enforceable Settlement Agreement gave to plaintiffs precisely the relief sought by

10   plaintiffs and directed by the Ninth Circuit, and thereby materially altered the legal

11   relationship between the parties by modifying defendants' behavior in a way that

12   directly benefits plaintiffs.  Exhibit 1. This relief flowed inexorably from the Ninth

13   Circuit's judicial imprimatur.  In ¶ 8 of the Settlement Agreement the parties thus

14   reserved all rights regarding recovery of attorneys fees. *Id.*

15       **B.    Plaintiffs Are The Prevailing Parties Under State Law
            And Are Entitled to Attorney Fees and Cost Pursuant to California**

16       **Code of Civil Procedure §1021.5**

17       Plaintiffs are entitled to attorney fees and costs as prevailing parties based on

18   CCP §1021.5, which codified the public policy of this state to ensure fee

19   compensation as an inducement for lawyers to act as "private attorneys general" and

20   take on public interest litigation that might otherwise be too costly to pursue.

21   *Graham v. Daimler-Chrysler Corp.*, 34 Cal.4th 553, 569 (2006), citing *Serrano v.*

22   *Unruh* (*Serrano IV*), 32 Cal.3d 621, 624 n.1 (1982).  Under CCP §1021.5, courts

23   apply a multi-prong test to assess whether a party should be awarded attorney fees.

24   The party seeking fees must be a "successful" or "prevailing" party.  A party will be

25   deemed "prevailing" if the action resulted "in the enforcement of an important right

26   affecting the public interest," by showing that, as a result of the action, "(a) a

27   significant benefit, whether pecuniary or nonpecuniary, has been conferred on the

28   general public or a large class of persons, (b) the necessity and financial burden of

7

private enforcement . . . , are such as to make the award appropriate, and (c) fees should not in the interest of justice be paid out of the recovery, if any." *Adoption of Joshua S.*, 42 Cal.4th 945, 952, n.2 (2008), quoting CCP § 1021.5.

"'Although [§] 1021.5 is phrased in permissive terms (the court 'may' award), the discretion to deny fees to a party that meets its terms is quite limited.   The [California] supreme court in *Serrano v. Unruh (Serrano IV)*, 32 Cal. 3d 621, 633 (1982) . . ., noted that the private attorney general theory, from which 1021.5 derives, requires a full fee award, 'unless special circumstances would render such an award unjust.' Pearl, Cal. Attorney Fee Awards (Cont. Ed. Bar 2d ed. 2005) §4.42, p.132." *Lyons v. Chinese Hospital Association*, 136 Cal. App.4th 1331, 1344 (2006) (brackets in *Lyons*). No special circumstances exist to justify denying the fee award here.

### 1.    The Settlement Agreement Establishes that Plaintiffs are Prevailing Parties

To effectuate the public policy expressed in §1021.5, California courts "have taken a broad, pragmatic view of what constitutes a 'successful' party." *Graham.* 34 Cal.4th at 565. A 'successful' party means a 'prevailing' party.  *Id.* at 570. "[P]laintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Maria P. v. Riles*, 43 Cal.3d 1281, 1292 (1987).

In this instance, Plaintiffs secured almost the same relief in the settlement agreement as the Ninth Circuit had granted.  The Ninth Circuit ordered the entry of an injunction prohibiting enforcement of LAMC § 41.18(d) between 9:00 p.m. and 6:30 a.m., which is what plaintiffs sought by the litigation. *Jones*, 444 F.3d at 1120; *id.* at 1138. The settlement agreement differs by only 30 minutes in the hours of non-enforcement. Thus, plaintiffs achieved through the settlement substantially what they sought by this litigation.

It is axiomatic that relief secured through a settlement agreement qualifies plaintiffs as prevailing parties under CCP § 1021.5, even if the agreement includes a disclaimer of liability on the merits. *Lyons*, 136 Cal. App. 4th at 1345, citing

8

*Santisas v. Goodin*, 17 Cal.4th 599, 621-22 (1998), *Folsom v. Butte County Assn of Governments*, 32 Cal.3d 668, 671 (1982),[2] and *Planned Parenthood v. Aakhus*, 14 Cal.App.4th 162, 174 (1993).[3]   The Supreme Court recently reaffirmed this principle in *Graham*, 34 Cal.4th at 566, citing *Fletcher v. A.J. Industries, Inc.*, 266 Cal.App.2d 313, 325 (1968) ("plaintiffs were successful in conferring a substantial benefit . . . , even though the litigation 'was resolved through a settlement'").

In settled cases, "courts presume that a party who formally, through settlement, agrees to afford another party relief does so because of the lawsuit." Pearl, *supra*, §2.23A, p.66.2.   Thus, the settlement agreement entered into by the parties in this action establishes that plaintiffs are the successful parties.

### 2.   The Settlement Agreement Need Not Address the Issue of Fees to Preserve Plaintiffs' Entitlement to Fees and Costs

The settlement agreement executed by the parties in this action provided that each party expressly "reserved all rights regarding the recovery of attorney fees." Exhibit 1.   "Compromise agreements '. . . settle only such matters and differences as appear clearly to be comprehended in them by the intention of the parties and the necessary consequences thereof, and do not extend to matters which the parties never intended to include therein, although existing at the time.' [Citations.] . . . They do not, however, (absent affirmative agreement of the parties), conclude matters incident to the judgment that were no part of the cause of the action." *Folsom*, 32 Cal.3d at 668, 677 (edits supplied).   Costs and statutory attorney fees are an incident of the judgment, not a part of it.   *Id.* at 677.   Therefore, fees may be awarded after a settlement agreement is reached "unless expressly or by necessary implication

---

[2] In *Folsom*, the plaintiffs agreed to dismiss their case as part of the settlement agreement, as is also the case here. 32 Cal.3d at 669.

[3] *See also Skaff v. Meridien North America Beverly Hills, LLC*, 506 F.3d 832, 844 (9th Cir. 2007), citing *Lyons*, 136 Cal. App. 4th at 1345.

1  excluded by the [settlement]." *Id.* at 678.  In this instance, fees were neither expressly

2  nor by "necessary implication" excluded by the settlement signed by the parties.

3          **3.     This Action Resulted in Enforcement of An Important Right**
                    **Affecting the Public Interest**
4

5          The settlement embodies the holding of the Ninth Circuit that an arrest for

6  sleeping or sitting on the sidewalk at night when there is insufficient available shelter

7  violates plaintiffs' Eighth Amendment rights to be free from cruel and unusual

8  punishment based on their status as homeless persons necessarily coupled with the

9  lack of shelter in the City.[4]   The California Supreme Court has held that "the

10 determination that the public policy vindicated is one of constitutional stature"

11 satisfies the requirement under CCP 1021.5 that "the action result in the enforcement

12 of an important right affecting the public interest." *Press v. Lucky Stores, Inc.*, 34

13 Cal.3d 311, 318 (1983).

14         **4.     The Settlement Conferred a Significant Benefit on a Large**
                    **Class of Persons**
15

16         The settlement agreement conferred a significant benefit on a large class of

17 persons in the City of Los Angeles.  Pursuant to the settlement, the City agreed to

18 suspend nighttime enforcement of LAMC § 41.18(d) until 1,250 new units of

19 permanent and supportive housing for the chronically homeless were added to the

20 available pool of such housing in the City, with half of these units located in or

21 adjacent to Skid Row.  The benefit to the large class of persons in this instance is

22 clear: none of the thousands of homeless persons forced to rest and sleep on

23 sidewalks because no other shelter is available may be cited or arrested for a

24 nighttime violation of LAMC 41.18(d).

25         In *Press*, the Court rejected the argument by the defendant that there was no

26

27 _____

28         [4] As noted previously, plaintiffs also filed suit under the analogous provisions
   of the California Constitution, Article I, sec. 7 and 17.

                                            10

1  benefit to a significant class of persons since the injunction was brought by only a

2  handful of petition signature gatherers at a single grocery store.  The *Press* Court held

3  that the benefit was not limited to the small number of individuals who sought to

4  gather signatures but, rather, that enforcement of constitutional rights necessarily

5  inures to the public as a whole.  *Press*, 34 Cal.3d at 318.

6  **5.**    **The Necessity and Financial Burden of Private Enforcement**
          **Make the Award of Fees Appropriate in This Case**
7

8  Finally, the necessity and financial burden of private enforcement makes an

9  award of attorneys' fees to plaintiffs appropriate.  The relevant inquiry is whether the

10  litigant's personal stake in the litigation exceeds its cost by a substantial margin.  *See*

11  *Beasley v. Wells Fargo Bank*, 235 Cal.App.3d 1407, 1416-1417 (1992).   Here,

12  plaintiffs are indigent individuals who could not, on their own, afford to hire

13  attorneys and pay costs in this case. *See Jones*, 444 F.3d at 1120 ("plaintiffs are

14  homeless individuals who live on the streets of Los Angeles); *id*., 444 F.3d at 1124

15  (plaintiff Purrie "sleeps on the streets because he cannot afford a room in an SRO"

16  and often cannot find a bed in shelter); *id.* (plaintiff Barger's "total monthly income

17  consists of food stamps and $221 in welfare payments . . . [so] he can rarely afford

18  shelter"); *id.* (plaintiff Cash "had not worked for approximately two years since

19  breaking his foot and losing his job . . . [and] suffers from severe kidney problems");

20  *id.* at 1125 (Edward Jones and his wife "receive $375 per month from . . . General

21  Relief"); *id.* (plaintiffs Patricia and George Vinson receive General Relief).  None of

22  these plaintiffs had the personal or collective resources to pay for this litigation.

23  Moreover, as they neither sought nor will receive monetary damages in this case,

24  plaintiffs have no financial interest in the relief they have achieved.

25  Plaintiffs satisfy each element of the requirement for an award of fees under

26  California law based on the settlement agreement entered into in this case.

27

28

11

## C.   Plaintiffs' Requested Hours-Times-Rates Lodestar Is Altogether Reasonable and Should Be Allowed

The proper manner "for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).[5] "The Supreme Court has repeatedly emphasized that the lodestar fee should be presumed reasonable unless some exceptional circumstance justifies deviation." *Quesada v. Thomason*, 850 F.2d 537, 539 (9th Cir. 1988) (citations omitted).  The hours-times-rates lodestar here is fully documented and supported. Attached at Exhibit 1 to the Memorandum is a summary of the fees by law firm and then by individual biller, including the unadjusted lodestar and the fees with a multiplier of 2.0 applied.  Plaintiffs seek a total of $772,987.00 for the Law Office of Carol A. Sobel and $556,050.00 for the ACLU Foundation of Southern California.

In determining the number of compensable hours, counsel for the prevailing parties should exercise billing judgment  as to the time properly billable. *Hensley*, 461 U.S. at 434.  This, however, does not necessarily involve a reduction in fees.  For example, although the use of many attorneys should be closely scrutinized, "We have previously recognized that broad-based class litigation often requires the participation of multiple attorneys." *Davis v. San Francisco*, 976 F.2d 1536, 1544 (9th Cir. 1992), *vacated in part as to expert fees*, 984 F.2d 345 (9th Cir. 1993).

Plaintiffs' counsel here exercised extensive billing judgment by billing for far fewer hours than the hours actually expended.  For example, counsel deleted all time spent by nearly a dozen lawyers and other legal personnel who worked on this litigation over the course of more than six years, and counsel also deleted time spent by the few timekeepers for whose work plaintiffs are seeking fees. *See* Decl. of Peter

_____

[5] California also applies the "lodestar" method. *Ketchum v. Moses*, 24 Cal.4th 1122, 1134 (2001).

Eliasberg at ¶¶ 6-7; Decl. of Carol Sobel at ¶ 17.

In determining reasonable hourly rates, the appropriate rates "are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel." *Blum v. Stenson*, 465 U.S. 886, 895 (1984) (footnote omitted). The requested market rates should be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895-96, n. 11. Such documented and supported market rates cannot be arbitrarily reduced, *Jordan v. Multnomah County*, 815 F.2d 1258, 1263-64 (9th Cir. 1987); cannot be reduced because they are higher than the lower rates paid by defendant government agencies to their retained private counsel, *Trevino v. Gates*, 99 F.3d 911, 925 (9th Cir. 1996); and cannot be reduced because the market rates are higher than the lower rates actually charged in similar cases by plaintiffs' own private counsel to low-to-middle-income clients, *Mendenhall v. National Transportation Safety Board*, 213 F.3d 464, 471 (9th Cir. 2000). Market rates prevail.

The market rates sought here are fully in line with the market rates prevailing in Los Angeles for legal services by legal personnel of reasonably comparable skill, experience, and reputation. *See* Decls. of Mirell, Litt and Richardson. In fact, given that Plaintiffs here have been represented by several of the very best civil rights lawyers in Southern California – as Plaintiffs' lawyers Carol Sobel, Mark Rosenbaum, and Peter Eliasberg for years now have been deemed to be among the top/best five percent of lawyers in Southern California, *see* Super Lawyers and Decls. of Sobel at Exhibit 2, Decl. of Eliasberg at ¶¶ 2,11 – the hourly rates sought here for these attorneys may be at the very low end of the market rates in Los Angeles.

Plaintiffs' hours-times-rates lodestar – representing many fewer hours of time than actually expended by Plaintiffs' counsel and other legal personnel, and based upon fully documented and supported market rates in Los Angeles – is eminently

reasonable and must be granted.

**D.    Plaintiffs' Lodestar Should Be Enhanced by a 2.0 Multiplier Because of the Exceptional Results Won, and Because of the Contingency of Any Fee Recovery**

An hours-times-rates lodestar may be enhanced under federal law and under state law based on the presence of several varying factors.  The presence of such factors here warrants an enhancement of the lodestar by a 2.0 multiplier.

As a matter of federal law, an hours-times-rates lodestar may be enhanced in cases where plaintiffs obtain exceptional success.  "[I]n some cases of exceptional success an enhanced award may be justified." *Hensley*, 461 U.S. at 435 (brackets added), quoted with approval in *Blum*, 465 U.S. at 897, 901.  Although such an enhancement is not required in such cases, enhancements for exceptional success are not at all uncommon. *See*, *e.g.*, *Wing v. Asarco, Inc.*, 114 F.3d 986 (9th Cir. 1997) (enhancement of 2.0 in part for exceptional results); *White v. City of Richmond*, 713 F.2d 458 (9th Cir. 1983) (enhancement of 1.5 for exceptional success); *cf. Guam Society of Obstetricians and Gynecologists v. Ada*, 100 F.3d 691 (9th Cir. 1996) (2.0 enhancement based on the undesirability of the case).

Although the contingency risk of obtaining fees only in the event of success is not a permissible rationale for a lodestar enhancement under federal law, *City of Burlington v. Dague*, 505 U.S. 557 (1992), contingency risk is an appropriate factor for enhancement under California state law, *Ketchum v. Moses*, 24 Cal.4th 1122 (2001) (rejecting *Dague*, approving a 2.0 enhancement for contingency risk, and citing lower state court enhancements for contingency risk); *Serrano v. Priest*, 20 Cal.3d 25 (1997) (1.4 enhancement in part for contingency risk).  And where pendent state law claims are alleged in a federal court lawsuit, the federal court may award an enhancement for contingency risk under state law. *Crommie v. California Public Utilities Commission*, 840 F. Supp. 719 (N.D. Cal. 1994) (requested lodestar doubled through a 2.0 contingency risk enhancement under California law), *aff'd sub nom.*

14

1  *Mangold v. California Public Utilities Commission*, 67 F.3d 1470 (9ᵗʰ Cir. 1995).

2      The hours-times-rates lodestar here should be doubled per either or both of

3  these rationales.  As to the degree of plaintiffs' success, especially given the novel,

4  uneven, and mostly unfavorable state of the law in cases involving homeless issues,

5  plaintiffs' success we submit was truly exceptional.  *See* Decls. of Sobel at ¶¶ 14-15;

6  Litt at ¶ 17.

7      And the contingency risk of prevailing in this lawsuit – in which pendent state

8  claims were asserted under Cal. Const. art I, § 7 (guaranteeing due process and equal

9  protection) and under Cal. Const. art I, § 17 (prohibiting cruel and unusual

10 punishment – was enormous.  Not only were the homeless plaintiffs obviously unable

11 to advance any fees or even to cover any of the out-of-pocket expenses to support this

12 lawsuit, but homeless plaintiffs present unique issues in litigation of this type and, in

13 addition, defendants mounted a tenacious defense requiring plaintiffs' legal team to

14 invest even more time litigating this case.  *See* Decl. of Carol Sobel at ¶¶ 8, 13-15.

15     Because of plaintiffs' exceptional success and/or because of the enormous

16 contingency risk here, the requested lodestar should be enhanced by a 2.0 multiplier.

17 **E.    Court-Awarded Attorneys Fees Properly Include Out-**
18 **      of-Pocket Expenses Which Also Should Be Allowed**

19     During the preliminary negotiations with the defendants, plaintiffs learned that

20 Defendants would oppose any award of out-of-pocket expenses.  They based their

21 opposition on the language in ¶ 8 of the Settlement Agreement, in which the parties

22 reserved all rights regarding the recovery of attorneys fees, without specifically

23 mentioning expenses or costs.  Defendants apparently believe that the omission of the

24 word "expenses" or of the word "costs" maybe constitutes a waiver of Plaintiffs' right

25 to recover out-of-pocket expenses.

26     Defendants' position is entirely without merit given the well-established legal

27 reality that statutory fees necessarily encompass out-of-pocket expenses.

28

"Under § 1988, the prevailing party may recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Dang v. Cross*, 422 F.3d 800, 814 (9th Cir. 2005).  This rule of law is neither of recent vintage nor unknown by Defendant City of Los Angeles.  "Under § 1988, [plaintiff] may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'" *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (brackets added), quoting with approval from *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1216 n. 7 (9th Cir. 1986), *reh'g denied and opinion amended*, 808 F.2d 1373 (9th Cir. 1987).  *See also Davis v. Mason County*, 927 F.2d 1473, 1488 (9th Cir. 1991) (citing cases).

Among the expenses allowed under the rubric of § 1988 fees in *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994), were expenses "for the following: service of summons and complaint, service of trial subpoenas, fee for defense expert at deposition, postage, investigator, copying costs, hotel bills, meals, messenger service and employer record production."  *See also International Woodworkers of America, AFL-CIO, Local 3-98 v. Donovan*, 792 F.2d 762, 767 (9th Cir. 1986) ("telephone calls, postage, air courier and attorney travel expenses").

The same is true under California fee-shifting statutes: fees include all reasonable costs.  *Beasley*, 235 Cal.App.3d at 1419, overruled in part re expert witness fees as costs, *Olson v. Automobile Club of So. Calif*, 42 Cal.4th 1142 (2008).

All of the expenses for which payment is sought here are expenses that would normally be charged to a fee paying client.  *See* Decls. of Eliasberg (¶5 and Ex. 8) and Sobel (¶ 18 and Ex. 4).  These expenses are fully recoverable here.

## CONCLUSION

For all of the foregoing reasons, plaintiffs respectfully request their motion be granted and they be awarded attorney fees in the amount of $1,350,062.00, reflecting

16

1  a 2.0 multiplier, and an additional $7,046.23 for reasonable costs, for a total award

2  in this case of $1,357,108.23, plus any additional amounts in fees and costs to adjust

3  for time spent on the opposition, if any, to this motion, and a hearing on the motion.

4

5

6  Dated: October 6, 2008                  Respectfully submitted,

7                                          ACLU FOUNDATION OF SO. CALIFORNIA
                                           LAW OFFICE OF CAROL A. SOBEL
8
                                           ___/s/_____
9                                          By: CAROL A. SOBEL
10                                         Attorneys for Plaintiffs

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17

CERTIFICATION OF ELECTRONIC SERVICE

I hereby certify that the foregoing document has been served this day by electronic service  through the Court's ECF filing system on all counsel of record in this case as listed in the attached Service List and, as to those who are not participating in the ECF filing system, the document has been served by email and/or First Class mail.


Dated:  October 6, 2008                           _____ /s/   Carol A. Sobel_____

-

18

SERVICE LIST

ROCKARD J. DELGADILLO
City Attorney
GARY GEUSS
CORY BRENTE
Office of the City Attorney
200 N. Main Street, 6th Fl. CHE
Los Angeles, CA 90012
t. 213 978-7021
f. 213 978-8785
e. cory.brente@lacity.or

PETER J. ELIASBERG
MARK D. ROSENBAUM
CATHERINE LHAMON
ACLU   FOUNDATION   OF   SO.
CALIF.
1313 W. Eighth Street
Los Angeles, CA 90017
t. 213 977-9500 x 228
f. 213 250-3919
e. peliasberg@aclu-sc.org

CAROL A. SOBEL
LAW OFFICE OF CAROL A. SOBEL
429 Santa Monica Blvd., Ste. 550
Santa Monica, CA 90401
t. 310 393-3055
f. 310 393-3605
e. Carolsobel@aol.com

19